## THOMAS H. MULDOON *vs.* CITY OF LOWELL.

Middlesex.    December 11, 1900. — March 1, 1901.

Present: HOLMES, C. J., KNOWLTON, BARKER, HAMMOND, & LORING, JJ.

Section 3 of St. 1896, c. 415, creating a department of supplies under the amended charter of the city of Lowell, provides that all material and supplies shall be purchased by the chief or head of that department, subject to the approval of the mayor, and that all bills for material and supplies shall state among other things the quality and quantity of articles purchased and received. *Held,* that the inspection of supplies is within the scope of the department, and that the chief of the department has authority to appoint an inspector whose duties are to inspect any goods furnished under a contract made by the chief of the department, and to see that the goods purchased are delivered and correspond in quality and quantity with the contract.

Under St. 1896, c. 415, amending the charter of the city of Lowell, the chief of the department of supplies elected by the voters of the city under § 3 of that act has authority to employ as many subordinates as the business of his department may seem to him to require, provided he does not exceed the appropriation made for his department by the city council.

CONTRACT to recover the sum of $222 for services performed by the plaintiff for the city of Lowell when employed as an inspector by the chief of the department of supplies of that city. Writ dated May 20, 1899.

At the trial in the Superior Court, before *Lilley,* J., the following facts were admitted or proved: That Andrew E. Barrett, who employed the plaintiff, was the duly elected, qualified and acting chief of the department of supplies of the city of Lowell under St. 1896, c. 415, § 3, and continued to hold that office up to the time of the trial; that, assuming to act for and on behalf of the city as the head of the department of supplies, he employed the plaintiff as an inspector of supplies, no specific period of employment being agreed upon, and promised him for such services the sum of $3 a day, which was a reasonable compensation.

The services which the plaintiff was employed to perform are fully stated in the opinion of the court. The plaintiff on February 15, 1899, entered upon this employment and performed the services required of him for a period of seventy-four days. At the time of the plaintiff's employment and at the time of

the trial there was a sufficient sum of money appropriated for and standing to the credit of the department of supplies of the city to pay for the plaintiff's services.

Jeremiah Crowley, mayor of Lowell, testified for the defendant, that before the employment of the plaintiff he had an interview with Barrett, the chief of the supply department, in which Barrett informed him, that he intended to appoint the plaintiff as an inspector, and he, Crowley, informed Barrett that in his opinion there was no necessity for any such officer, that Barrett had no right to employ him and that if he did so, he, the mayor, would not sign any pay-roll on which the plaintiff's name appeared.

At the close of the evidence, at the request of the defendant's counsel, the judge ruled that Barrett, as chief of the department of supplies of said city, was not authorized to make the contract declared on, and directed a verdict for the defendant, and at the request and by agreement of both parties ordered that the case be reported for determination by this court.  Pursuant to this order, *Lilley*, J. having resigned since the trial, the case was reported by *Lawton*, J. for the consideration of this court.  If on all the evidence the judge erred in directing a verdict for the defendant, then judgment was to be entered for the plaintiff in the sum of $222, with interest thereon from the date of the writ.  Another question was reported in regard to the exclusion of certain evidence offered by the plaintiff, but the decision of the court has made this immaterial.

*D. J. Donahue*, for the plaintiff.

*F. W. Qua*, for the defendant.

HAMMOND, J.  The only question is whether Barrett, the chief of the department of supplies, had the power as such to hire the plaintiff.  The first objection to the validity of the appointment urged by the defendant is that the services which the plaintiff was hired to perform were not within the scope of the department of supplies as set forth in St. 1896, c. 415, § 3, which, so far as material to this point, is as follows: " There shall be a department of supplies, and all material and supplies for the city shall be purchased by the chief or head of such department, subject to the approval of the mayor. . . . All bills for material and supplies shall show the date of purchase, date

of delivery, the unit of price, the quality and quantity of articles purchased and received, the number and date of the order for purchase." The services which the plaintiff was hired to perform were, to inspect any goods that were furnished the city under a contract made with the chief of the department of supplies when requested so to do ; to see that the goods purchased were delivered to the city and that they corresponded in quality and quantity with the contract ; to visit the several city departments and ascertain and report to the chief of the supply department whether goods ordered had been received and corresponded in quality and quantity with the contract; he also, in some instances, attended to the weighing of coal, where there was no sworn weigher, and also on some occasions went into the cars and shovelled over the coal to see that it was of the proper quality and quantity ; in some cases he measured lumber, and if there was delay in the delivery of the goods, looked after the same and caused them to be delivered ; and if there was a dispute with respect to any bill rendered for supplies, he visited the head of the department and reported the same to the chief of the department of supplies. In the absence of any provision to the contrary we think that the duty to purchase supplies included the duty to see that the supplies delivered corresponded in quality and quantity with the contract of purchase. It was as much the duty of the purchasing agent to see that he got what he purchased as to make a contract to get it. The full contract of purchase was not completed until the 'goods called for by the contract had been delivered, and it was his duty to see that that was done. The plaintiff's work was within the scope of the section. He made no contracts but assisted only in the matter of inspection.

The defendant further contends that the statute does not authorize the chief of the supply department to increase the number of men employed in his department, or to fix their compensation without special authority from the city council, and in support of that contention it argues that the provision of the fifth section " that the heads of the several departments and offices shall have the power to employ and to discharge all subordinate officers and employees in their respective departments " does not authorize the head of a department to employ any num-

ber of men in his department at his pleasure, or to fix their compensation, but that " the power to determine how many subordinate officers and employees there shall be in any department remains with " the city council.

Prior to the statute under consideration the revised charter of the city, St. 1875, c. 173, provided in § 2 that the administration of the fiscal, prudential and municipal affairs of the city should be vested in a mayor and city council; in § 16, that the mayor should be the chief executive officer; in § 17, that the city council should elect certain officers therein named, and should also elect in such manner as should be determined by ordinance all other officers necessary for the good government, peace and health of the city not otherwise provided for, the duties of such officers to be such as are required by ordinance, and their compensation to be fixed by the city council; and in § 23, that all other powers, excepting some not material to the point under consideration, now vested in the city or inhabitants thereof, should continue to be vested in the city council.

In this charter the only department spoken of as such is the fire department (§ 31), but, in the various ordinances which were in force at the time the statute of 1896 was passed, several of the divisions under which the business of the city was carried on were therein called departments.   In addition to the fire department, mention is made of the police department (Rev. Ord. of 1894, c. 29); and the department of the superintendent of streets (c. 36); and in c. 38, it is made " the duty of each of the standing committees to exercise a close supervision over all matters of detail, relating to their respective departments " (§ 3); they were authorized to make contracts relating to their respective departments under certain restrictions (§ 4), and certain of the committees, especially those on streets and on sewers, were expressly authorized to determine as to the number of laborers to be employed in their respective departments, and if in their judgment the interest of the department required it, to create and discontinue positions of authority in the department subordinate to that of superintendent; but the direction of any committee over its department was not to extend so far as to permit the committee or any member thereof directly or personally to employ or discharge any officer or workman

employed·therein.  §§ 7, 10, 11, 12, 14, 16, 19.  Without going further into detail it is sufficient to say that under the ordinances the work of the city was divided into sections called departments, and that the business of each department, including the purchase of supplies and material, was carried on by the chief officer under the direction of the appropriate standing committee of the city council.

In this state of affairs St. 1896, c. 415, was passed.  Its plain purpose was to take from the city council much of the direct power of control which through its standing committees it had theretofore exercised over the various departments of the city, and to vest the power in the respective heads of the departments, and further to stop the purchase of material and supplies by several agents, and to have all such purchases made by one department.

It establishes a department of supplies and provides that all material and supplies for the city shall be purchased by the head of said department subject to the approval of the mayor.  The chief is neither appointed by the mayor nor elected by the city council, but is elected by the voters at the annual municipal election.  § 3.

It will be seen that the statute works a radical change in the policy respecting the purchase of supplies.  A special department is created not by an ordinance under the general authority of the city council to carry on the affairs of the city, but by an act of the Legislature amending the charter, and as if to make the change more marked the head of this department owes his position neither to the mayor nor the city council, except so far as he may be removed or suspended under the second section of the statute.  Under the statute the heads of the several departments have the power to appoint and employ and to discharge all subordinate officers and employees in their respective departments (§ 5) ; and they have the charge and management of the business thereof except as respects the purchase of material and supplies (§ 6), but they cannot exceed the appropriation previously voted by the city council.  § 8.  Each chief may employ the men that the business of the department may seem to him to require, and he may discharge them, provided always he does not exceed the appropriation.  To him is given the power,

and upon him rests the responsibility for its exercise. To hold otherwise and to adopt the contention of the defendant that the number of men to be employed is to be regulated by the city council obviously would hamper seriously the management of the departments, as for instance that of streets, and it seems to us inconsistent with the general scope as well as the express language of the statute. The checks upon the head of the department are to be found in the provision that he shall not exceed the appropriation, and that he may be removed as provided in the second section of the statute. He is given the power but he exercises it at his peril, for he may at any time be called to account by the mayor or city council. According to the terms of the report there must be

> *Judgment for the plaintiff for $222, and interest from the date of the writ.*