WEBB GRANITE AND CONSTRUCTION COMPANY vs. CITY
OF WORCESTER.

Worcester.    October 5, 1904. — February 28, 1905.

Present: KNOWLTON, C. J., BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Municipal Corporations.    Way.    Worcester.    Contract,* Performance and breach.

Whether an appropriation made by a city for "construction of streets" includes payment for land acquired by right of eminent domain over which the streets are laid out, *quære.*

Under the provision of the revised charter of the city of Worcester, St. 1893, c. 444, § 29, that "No sum appropriated for a specific purpose shall be expended for any other purpose, and no expenditure shall be made and no liability incurred by or on behalf of the city until the city council has duly voted an appropriation sufficient to meet such expenditure or liability, together with all prior unpaid liabilities which are payable therefrom," land damages awarded under a lay out of new streets for land of which possession has not been taken, although notice has been given of the time within which buildings must be removed, are not "unpaid liabilities" payable from the appropriation on hand which must be covered before new expenditures can be authorized.

Under the revised charter of the city of Worcester, St. 1893, c. 444, § 40, the street commissioner has general authority in the management of his department to make contracts not to exceed a certain amount and above that amount can make such contracts when approved by the mayor. Therefore, after the passage of an order by the city council requiring the street commissioner under the direction of the mayor to construct a three arch masonry bridge at the causeway crossing Lake Quinsigamond, and after the necessary appropriation has been made, the street commissioner in conjunction with the mayor has power to make a contract for the construction of the bridge.

Where a vote of a city council ordering the construction of a certain bridge by the street commissioner under the direction of the mayor contains a statement of the estimated cost of the bridge, the amount named is to be treated as a mere expression of opinion and not as imposing a limit which cannot be exceeded in a contract for the construction of the bridge, and the street commissioner and the mayor using their discretionary power for the benefit of the city may accept a bid for the work somewhat in excess of the estimated cost.

It is no defence to an action by a contractor against a city for refusing to proceed with the work contracted for, that the plaintiff did not complete the work within the time fixed by the contract, if the sole cause of the plaintiff's delay was an injunction, served on both parties to the contract in a suit in equity brought by ten taxable inhabitants under Pub. Sts. c. 27, § 129, (R. L. c. 25, § 100,) to restrain the expenditure called for by the contract, and subsequently dissolved.

CONTRACT on a contract in writing dated July 30, 1897, for the building by the plaintiff for the defendant of a stone bridge

in substitution for a part of the causeway crossing Lake Quinsigamond. Writ dated August 24, 1898.

In the Superior Court the case was heard by *Fessenden*, J., without a jury. He found for the plaintiff in the sum of $10,289.98; and the defendant alleged exceptions.

The order of the city council of the defendant passed on May 24, 1897, described in the first paragraph of the opinion, was in full as follows:

" Ordered : — That the street commissioner be and he is hereby authorized and directed under the direction of the mayor, and under the immediate direction of the city engineer, to construct at the causeway crossing at Lake Quinsigamond, a three arch masonry bridge, in accordance with plans on file in the office of the city engineer.

" Estimated expense, $62,658.27.

" The cost of construction to be charged to street construction account."

*A. P. Rugg*, for the defendant.

*R. Hoar*, for the plaintiff.

BRALEY, J. The contract between the parties rests on an order of the city council passed May 24, 1897, that required the street commissioner, under the direction of the mayor, to construct " a three arch masonry bridge " at the causeway crossing Lake Quinsigamond, " the cost of construction to be charged to street construction account."

In the litigation which took place over this order, two suits were brought to test its validity. It was decided in one, that as the order was for specific repairs of a public way, which the city council had authority to make, a petition for a writ of certiorari to quash the record should be denied ; and in the other, that a bill in equity brought by ten taxable inhabitants of the defendant under Pub. Sts. c. 27, § 129, after the contract had been signed, to restrain the expenditure of money thereunder, and in which the plaintiff was joined as a party defendant, should be dismissed. *Bigelow* v. *City Council of Worcester*, 169 Mass. 390. See also St. 1893, c. 444, § 20, which is the revised charter of the defendant, and *Worcester* v. *County Commissioners*, 167 Mass. 565.

Although the order must be treated as valid, the defendant now contends that on July 30, 1897, when the contract was

executed, there was no sufficient appropriation available from which the cost of the bridge could properly be paid. If this is proved, then the city was prohibited from incurring this liability, as the revised charter provides that "No sum appropriated for a specific purpose shall be expended for any other purpose, and no expenditure shall be made and no liability incurred by or on behalf of the city until the city council has duly voted an appropriation sufficient to meet such expenditure or liability, together with all prior unpaid liabilities which are payable therefrom." St. 1893, c. 444, § 29.

That the plaintiff was required to take notice of this statutory limitation may be conceded, yet the defendant's authority to bind itself was limited only by conditions that depended upon previous lawful municipal action.

The specific appropriation provided by the order of June 1, 1897, "for the construction of streets and bridges" was more than sufficient to pay for the bridge and construction of streets previously ordered, unless damages awarded for lands taken in the laying out of these streets are to be deducted.

All the decrees taking the land, awarding damages therefor and establishing the lay out, were in the usual form, and it was within the power of the city council to have made an appropriation from which damages should be paid when the lands were entered upon and possession taken for purposes of construction. Pub. Sts. c. 49, §§ 14, 69, 91. St. 1892, c. 415, § 4. St. 1893, c. 444, § 20. See *Harding* v. *Medway*, 10 Met. 465.

No money, however, was appropriated by any separate order.

Assuming without deciding that if damages are to be paid from this account it must be for the reason that the general words "construction of streets" include payment for land acquired by right of eminent domain over which they are laid out, this defence is not sufficient to enable the defendant to avoid the contract. In order to sustain this position it is not enough to prove that the total "estimated expense" shown by the orders for streets thus reduced the appropriation, even if these estimates are held to combine damages and costs of construction; for the liability of the city to pay therefor must have been actually incurred. The restriction of the right to contract which is invoked covers only all prior liabilities which were

" payable therefrom." Its liability to pay damages did not accrue until the city had entered upon and taken possession of the land for the purpose of constructing the streets. Pub. Sts. c. 49, §§ 14, 69, 91. *Corey* v. *Wrentham*, 164 Mass. 18, 22, and cases cited. *Pegler* v. *Hyde Park*, 176 Mass. 101, 103. *Wheeler* v. *Fitchburg*, 150 Mass. 350, 352.

Bartlett Place and Carlton Street were among the new streets. Both were ordered constructed May 10, 1897, and under the lay out of each substantial land damages had been awarded, which, not being accepted, were afterwards increased as the result of trials in the Superior Court. The defendant admits that if these damages are not to be deducted it was free to make the contract. The decrees of the city council laying out each street might have contained a provision prescribing the time in which buildings should be removed and directing the delimitation of each way by the setting of bounds, and that notice be given to the owners of buildings to remove them. *White* v. *Foxborough*, 151 Mass. 28, 36, 37. *Taber* v. *New Bedford*, 135 Mass. 162. This was not done, but the orders for construction in each case authorized and directed the street commissioner, under the direction of the mayor, to construct the streets in accordance with the decree. The street commissioner was thus charged with the duty and, under the revised charter, clothed with authority to do whatever was required to carry out these orders unless otherwise directed by the mayor, who does not appear to have interposed. See St. 1893, c. 444, § 40.

The act of the city engineer in setting bounds showing the lines of these streets was not done under any order, ordinance or statute that imposed upon him the duty to take such action independently of the street commissioner.

Indeed the inference is that the work was done for his own convenience, as the agreed facts state that the street commissioner, who, on June 17, 1897, had notified the landowners to remove their buildings, did not direct the setting of bounds, neither did he know that they had been set.

There is a further uncontroverted statement by the street commissioner, which is incorporated in and made a part of the agreed facts, that " the first work done under my direction and with my knowledge as street commissioner for the purpose of

the construction of these streets was on September 13," 1897 ; and this must be considered as fixing the date when possession was actually taken for this purpose.

A notice previously given to remove buildings, even if followed by their removal, from the proposed locations, though a significant act that might indicate an ultimate design to work the streets, does not constitute an entry upon or taking possession of the land, and is not sufficient to give the landowner a claim for damages for land taken. Pub. Sts. c. 49, §§ 14, 88. *Parker* v. *Norfolk,* 150 Mass. 489. *Corey* v. *Wrentham, ubi supra.* *Wilcox* v. *New Bedford,* 140 Mass. 570.

If no further steps are taken any expense to which he may be put by such preliminary measures is provided for by the express language of the statute, which gives to him full indemnity.

At the date of the contract, therefore, the liability to pay the awards had not arisen or become fixed, and the estimates made for this purpose were not " unpaid liabilities."

The defendant further contends that even if the order was valid, and the contract not prohibited, the street commissioner was not authorized to execute the agreement.

That the city council legally could authorize the building of the bridge must be taken as settled, and the authority of the street commissioner to act for the defendant may be found in the terms of the order itself. The language used is broad. He is not only " directed " but " authorized " to construct the bridge, and this implies something more than doing the work in the manner usually followed for making ordinary repairs of public ways. *Damon* v. *Granby,* 2 Pick. 345, 352.

The plan and details of construction submitted by the city engineer called for a large expenditure, and contained two estimates, one for a structure of stone, and the other for one of steel. It was decided finally by the order that the bridge should be built of stone, and this vote well might be construed independently of other considerations as giving to the street commissioner, if his action was approved by the mayor, the power to make the contract in behalf of the city for the labor and materials.

Under the revised charter the street commissioner also was one of the officers of the municipality, chosen by the city coun-

cil. He had as such officer a general authority, in the management of his department, to make contracts not to exceed a certain amount, but beyond this sum, in order for a contract made by him to be binding upon the defendant, it was necessary to have the approval of the mayor. After the unrestricted order had been passed and the necessary appropriation made, this statutory power was sufficient to enable him, in conjunction with the mayor, to make the contract with the plaintiff. St. 1893, c. 444, §§ 18, 23, 32, 39, 40. See *Muldoon* v. *Lowell*, 178 Mass. 134, 138; *Stratton* v. *Lowell*, 181 Mass. 511.

It is true that the contract price was somewhat in excess of the proposed cost stated in the order, but this estimate was not a limitation of the amount to be paid for the bridge so that in making an agreement to pay more the street commissioner must be held to have exceeded his authority. The city council had not determined what sum should be expended for the work, and the amount named by them is to be treated as a mere expression of opinion, and not as a restriction the limits of which he could not exceed. *Keyes* v. *Westford*, 17 Pick. 273. It was thus left to him and the mayor to use their judgment in determining the final amount for which it should be built. As the plaintiff's bid was the lowest among those who competed for the work, and exceeded the estimate by only a relatively small amount, these officers, in an undertaking of this magnitude, could be found to have acted within their discretionary powers and for the benefit of the defendant in accepting it. The excess shown by the contract in the absence of fraudulent or corrupt conduct on their part does not render it voidable.

The defendant further urges that the plaintiff did not comply with the terms of the contract because after it began it did not complete the work within the time fixed. But this delay arose solely from the service on the parties of an injunction issued in the suit in equity to which reference has been made.

Whatever the rule may be in the case of a bilateral contract where ordinarily one party being ready and free to perform can put the other in default for damages, because the latter is prevented from performance by a contingency which was not foreseen or against which he should have stipulated, here neither could tender performance during the life of the injunction, as

both parties were equally restrained from going on by operation of law. *Jones* v. *United States,* 96 U. S. 24. *Chicago, Milwaukee & St. Paul Railway* v. *Hoyt,* 149 U. S. 1. *Brown* v. *Royal Ins. Co.* 1 E. & E. 853. *Wareham Bank* v. *Burt,* 5 Allen, 113, 116, 117.

Nor was the plaintiff obliged to resort to the useless effort of seeking relief by asking for such modification as would enable it to perform a contract, the legality of which on the defendant's part was the only issue involved. To grant such a request would be equivalent to a decision of the main question, which could be determined only after a trial on the merits. And the case at bar is not parallel with the case of *Wilkinson* v. *First National Ins. Co.* 72 N. Y. 499, relied on by the defendant, where it was held that the plaintiff having been enjoined by strangers to the contract from receiving the proceeds of a policy of insurance furnished no sufficient reason for his failure to bring suit to recover on the policy before the period of limitation had expired within which by its terms such a suit must be begun. See also *Paul* v. *Fidelity & Casualty Co.* 186 Mass. 413.

Moreover, as the injunction did not operate to destroy the contract although their several obligations under it were thus temporarily suspended, when they were simultaneously relieved from disability by its dissolution, no legal advantage had been gained by one over the other by reason of the enforced delay. *Baylies* v. *Fettyplace,* 7 Mass. 325. *Baker* v. *Johnson,* 42 N. Y. 126. *People* v. *Globe Ins. Co.* 91 N. Y. 174. *O'Reilly* v. *Kerns,* 52 Penn. St. 214.

Whether the plaintiff, after the injunction had been dissolved, should immediately have gone forward, or was guilty of inexplicable delay, or whether there was a refusal by the defendant either to permit the plaintiff to perform, or to allow the city engineer to furnish the proper plans called for by the contract and which were necessary to enable it to go on with the work, or whether the lapse of time, which had occurred without fault of the parties, had gone far enough to make performance so expensive and burdensome that it would be unreasonable to require them to proceed further under it, were questions of fact which have been settled adversely to the defendant.

Other requests raised questions which relate to the effect to

be given certain letters sent by the plaintiff to the mayor and city council, and to the conduct of the plaintiff after the dissolution of the injunction, by which it now is said that in seeking a modification of the terms of the contract, and making no attempt in good faith to carry it out, it must be held to have waived its right to insist upon performance by the defendant. In order to find for the plaintiff the presiding judge must have determined not only that the delay had not been unreasonable, but that the plaintiff did not itself intend either to terminate the contract or to accept a cancellation of it if offered by the defendant, and these requests became immaterial. And as a valid contract was proved, which was found to have been broken by the defendant, the first ruling asked, that " upon all the evidence, the plaintiff is not entitled to recover," could not be given. The remaining exceptions relate to the admission of certain evidence on the measure of damages, and in part to the rule adopted for their assessment, but these have not been argued, and we do not consider them.

*Exceptions overruled.*