DAVID D. SCANNELL, JUNIOR, vs. STATE BALLOT LAW
COMMISSION.

Suffolk.    June 20, 1949. — June 30, 1949.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Boston.   Municipal Corporations, Charter, Officers and agents.   State
Ballot Law Commission.   Quasi Judicial Tribunal.   Certiorari.*

The State ballot law commission, upon an appeal under St. 1948, c. 452,
§ 4, acts as a quasi judicial tribunal, and certiorari lies to correct
·errors of law committed by the commission notwithstanding the
provision of the statute that its decision "shall be final."

The validity of a petition under St. 1948, c. 452, § 3, seeking submission
to the voters of Boston of the question of adopting the Plan A form
of government, was not affected by the facts that, nearly simultane-
ously with the filing of the statutory typewritten sheet respecting
Plan A with the board of election commissioners, typewritten sheets
respecting Plan D and Plan E also were filed with the board and that
the board furnished blanks for subsequent signers respecting Plan A
several days before it furnished the blanks respecting the other plans,
where it appeared that all the blanks were furnished within the ten
day period prescribed in the statute and that the board acted in good
faith.

The methods and means to be employed by the board of election com-
missioners of Boston in carrying out its duty of furnishing blanks for
subsequent signers under St. 1948, c. 452, § 3, are within the discre-
tion of the board acting in good faith.

PETITION for a writ of certiorari, filed in the Supreme
Judicial Court for the county of Suffolk on April 18, 1949.

The case was reserved and reported by *Williams,* J.,
without decision.

The case was submitted on briefs.

*J. J. Delaney, Jr.,* for the petitioner.

*F. E. Kelly,* Attorney General, *H. W. Radovsky & J. Bres-
nahan,* Assistant Attorneys General, for the respondent.

RONAN, J.   This is a petition for a writ of certiorari to
quash a decision of the respondent commission that a cer-
tain petition, seeking to have submitted to the voters of

Boston at the next municipal election the question whether the Plan A form of government as described in St. 1948, c. 452, should be adopted, was a valid and sufficient petition. The case was reserved and reported by the single justice upon the petition and the return as amended, without decision, for the determination of the full court.

The voters of Boston were afforded an opportunity by St. 1948, c. 452, to decide whether they desired to change their existing charter and to substitute therefor one of the new forms of municipal government set forth in the statute as Plan A, Plan D and Plan E. The procedure for submitting the question to the voters is outlined in § 3 of this statute. A separate typewritten sheet in the statutory form, stating the question whether the city shall adopt one particular plan, designating the plan by name, and signed by not less than ten nor more than fifteen qualified voters of the city, shall, not earlier than the first Wednesday of February next preceding the regular municipal election at which the question is to be submitted to the voters, be presented to the board of election commissioners, hereinafter called the board. Upon certification of a sheet by the board, the board is required within ten days after the filing of the sheet to furnish blanks for subsequent signers. These blanks, when signed by at least ten per cent of the voters at the State election next preceding, are to be offered as one petition and, together with the typewritten sheet, may be filed with the board not later than the first Wednesday in July next preceding the regular municipal election at which the proposed question is to be submitted to the voters. The board shall examine the petition, certify the number of signatures which are the names of qualified voters up to twelve per cent of the registered voters at the last State election, and attach to the petition the results of such examination not later than thirty days after the filing of the petition.

Section 4 of said statute provides for an appeal to the State ballot law commission, hereinafter called the commission, by any registered voter if any question arises as

to the validity or sufficiency of the petition. The commission shall render a decision, within thirty days after the petition has been submitted to it, which shall state its finding as to the validity and sufficiency of the petition. The decision of the commission shall be final. If the board shall have certified that the petition contains at least the required number of signatures and if, upon an appeal, the commission shall decide that the petition is valid and sufficient, the question shall be printed upon the ballots used at the next regular municipal election. The plan shall be adopted if a majority of the voters voting on said question vote in the affirmative.

The present controversy turns entirely upon the action of the board when four typewritten sheets were presented to it shortly after the opening of the office of the board on the morning of February 2, 1949, and the action of the board in issuing blanks for subsequent signers. It appears from the return filed by the commission that there was evidence that the chairman of the board arrived at his office at seven o'clock in the morning of February 2, 1949, in response to a telephone call from the custodian of the city hall; that he found there one Mrs. McDonald, who informed him that she desired to file Plan A papers; that one Collins arrived at 7:15 A.M. to file papers for the Boston Committee for Plan E; that one Kaplan arrived at 7:30 A.M. to file papers for Plan D; and that one Ahearn arrived at 8:55 A.M. to file papers "for Plan E for Boston." The chairman gave a slip to each of these four persons bearing "a time stamp of their arrival" and opened the office at nine o'clock, and the four persons took their position in line in the order in which they arrived. The typewritten sheets for Plan A, for Boston Committee for Plan E, for Plan D, and for Plan E for Boston were filed at 9:01, 9:04, 9:05 and 9:08 A.M. respectively. The four typewritten sheets were certified by the board in the order in which they were filed. All were certified before noontime on the following date and were referred to the city printing department for the printing of the necessary blanks in the order in which the said sheets had been filed. Print-

ing of blanks for Plan A began on the afternoon of February 2, 1949, and at five o'clock in the afternoon two thousand printed blanks for Plan A were delivered to the board, and all of the remaining Plan A blanks were printed and delivered on February 3, 1949.  Two thirds of the total blanks for the Boston Committee for Plan E were printed and delivered on February 3, 1949, and the remainder on February 4, 1949.  Printing of the blanks for Plan D began on February 4, 1949, and some of these blanks were delivered to the board on February 4, 1949, and the balance on February 5, 1949.  The city printing plant did not operate on Saturday, February 5, 1949, nor on Sunday, February 6, 1949.  The printing of blanks for Plan E for Boston commenced on Monday, February 7, 1949, and was completed the next day when the blanks were transmitted to the board. The city plant had seven presses, each capable of printing one thousand blanks an hour, but not all of these presses could be used for printing the blanks as it was necessary to use some of them to turn out other work which had to be completed within a certain required time.

The petition for Plan A was filed with the board on February 14, 1949.  The board on March 15, 1949, certified that the petition contained forty-seven thousand four hundred seventy-seven signatures as the names of qualified voters of Boston, although only forty-one thousand sixty-eight signatures were required.  The petitioner appealed to the commission.  The petitioner admitted that the petition contained the necessary number of signatures.  The commission found that all four typewritten sheets were certified by the board within forty-eight hours of their filing; that the necessary blanks were furnished within ten days of the filing of the typewritten sheets; and that the board complied "with all the provisions contained in § 3 of said c. 452, exercising good faith in all of its proceedings."  It also found that the petition was valid and sufficient.

The principal contention of the petitioner is that the board was not authorized to issue blanks to the Plan A group six

days prior to the issuance of blanks to the Plan E for Boston group and so to give to the former an advantage over the latter in their contest to secure signatures upon their respective blanks. Doubtless, the time available for procuring the necessary signatures was important, for the proposed plan mentioned in the petition which was first filed and found to be sufficient and valid was the only plan which could be submitted to the voters at the next municipal election. The only question now presented is whether the board committed an error of law in furnishing the blanks to the representatives of Plan E for Boston six days after it began to furnish them for signers for Plan A.

Although the statute provides (§ 4) that "The decision of the state ballot law commission shall be final," this does not prevent a party, without remedy by appeal, exception or other mode of correcting errors of law, from resorting to a petition for a writ of certiorari in order to bring the record of the judicial or quasi judicial tribunal showing the principles of its decision before a superior court for an examination as to substantial and material errors of law apparent on the record which, if allowed to stand, will result in manifest injustice to the petitioner. *Hough* v. *Contributory Retirement Appeal Board,* 309 Mass. 534, 535. *Commissioner of Corporations & Taxation* v. *Chilton Club,* 318 Mass. 285, 287. *Opinion of the Justices,* 321 Mass. 759, 765.

The general and broad power of the Legislature to regulate the manner in which the voters of a city may proceed to secure the expression of the popular will upon the adoption of a new city charter has been recently discussed at great length with an ample citation of authorities in *Moore* v. *Election Commissioners of Cambridge,* 309 Mass. 303. A somewhat different method is provided for by St. 1948, c. 452. If after taking the necessary preliminary steps a petition is filed and certified by the board to contain the requisite number of signatures, or if the commission upon an appeal from the board determines the petition to be valid and sufficient, then the question contained in that petition is the only one that may be submitted to the voters at the

next municipal election. §§ 3, 4, 5. We need not determine what factors are included in determining "the validity or sufficiency of the petition," for we assume in favor of the petitioner that the manner of furnishing the blanks for subsequent signers is included therein. The commission exercising "all the powers conferred upon it relative to objections to nominations for state offices," § 4, in determining that issue, after a hearing, was acting in a quasi judicial manner, and the petitioner may by a writ of certiorari secure a judicial review to correct any substantial errors of law that may have been committed by the commission. *Compton* v. *State Ballot Law Commission,* 311 Mass. 643. *Morrissey* v. *State Ballot Law Commission,* 312 Mass. 121, 127. *Kelly* v. *State Ballot Law Commission,* 316 Mass. 512. *Flynn* v. *Board of Registration in Optometry,* 320 Mass. 29.

The crucial portion of the pertinent statute, St. 1948, c. 452, § 3, is in these words: "Within forty-eight hours after the presentation of said typewritten sheet said board shall certify thereon the number of signatures which are the names of qualified voters in the city; and if said typewritten sheet contain the signatures of at least ten qualified voters as aforesaid, said board shall within ten days after the presentation of said typewritten sheet provide blanks for the use of subsequent signers."

All that § 3 requires the board to do in supplying the parties with blanks is contained in the general provision that a sufficient number shall be furnished within a prescribed time. The petitioner concedes that § 3 applies if there is only a single proceeding pending before the board, but contends that it does not apply where there are several typewritten sheets seeking blanks for the signatures of those in favor of the adoption of different ones of the three plans mentioned in c. 452. The statutory scheme defining the steps to be taken in order to have a proposed new charter submitted to the voters does not purport to confine its operation to instances where only one typewritten sheet is filed. The Legislature contemplated that different groups of voters might desire to have the adoption

of some one of these charters submitted to the voters. In the instant case, four petitions were sought for the purpose of presenting to the voters one or another of these three charters. The Legislature has placed no restrictions upon the number of typewritten sheets that may be filed with the board, or upon the number of petitions originating from these sheets that may also be filed with the board, although the particular plan mentioned in the petition first filed and found to be valid and sufficient is the only plan that can be submitted to the voters. If the earliest filed petition be found to be invalid and insufficient, then the second petition filed is to be considered by the board and, if found to be in order, the question contained in that petition is the one upon which the voters are to express an opinion at the next election. § 5. The whole statutory plan permits the filing of various typewritten sheets, the furnishing of blanks to those who filed such sheets, and the subsequent filing of petitions. It is against this background that the provisions of § 3 must be construed. The sole purpose of the section is to provide the method for getting the question of the adoption of one of these three charters upon the ballot. The procedure is to be followed in every case, irrespective of the number of typewritten sheets filed with the board. Only one mode of procedure is prescribed for all. A uniform practice has been established, and the duty expressly imposed upon the board is to furnish blanks in all cases within ten days after the filing of each typewritten sheet upon the certification of the sheet by the board. Section 3 defines the procedure to be followed upon the filing of every typewritten sheet. The board admittedly complied with the express terms of this section. We cannot read into this section an exception limiting its application to instances where a single proceeding is before the board when the statute is couched in broad terms and manifestly is designed to establish a uniform method of procedure for all cases to be observed by those who seek the adoption by the city of one of the proposed charters. *Foster* v. *Curtis*, 213 Mass. 79, 85. *Watertown* v. *Dana*, 255 Mass. 67, 72. *Boston*

*Safe Deposit & Trust Co.* v. *Commissioner of Corporations & Taxation,* 273 Mass. 187, 194. *Armburg* v. *Boston & Maine Railroad,* 276 Mass. 418, 421, 422. *Brink* v. *Commissioner of Corporations & Taxation,* 299 Mass. 280, 284. *Commonwealth* v. *Gardner,* 300 Mass. 372, 375, 377. *Kelly* v. *State Ballot Law Commission,* 316 Mass. 512, 516.

It is proper to point out that, if it might be thought that fairness requires that the necessary blanks for subsequent signers should be distributed at the same time to those who have filed typewritten sheets at practically the same time, then the remedy for accomplishing such distribution rests entirely with the Legislature, for we can only construe the statute as it is written without regard to our own ideas of expediency.

The election commissioners constitute a statutory board having only the powers, duties and obligations which are expressly conferred by law or such as are reasonably necessary for the proper functioning of the board in carrying out and effectuating the purpose for which it was established. *Hathaway Bakeries, Inc.* v. *Labor Relations Commission,* 316 Mass. 136, 139. *Saint Luke's Hospital* v. *Labor Relations Commission,* 320 Mass. 467, 470–471. A statutory grant of a power may be general or particular. An express grant carries with it by implication all incidental authority required for the full and efficient exercise of the power conferred. The Legislature need not enumerate nor specify, definitely and precisely, each and every ancillary act that may be involved in the discharge of an official duty. It is enough for the Legislature to impose the duty to be performed within a prescribed field for a designated end, leaving to the board's discretion the selection of the appropriate methods and means and the other administrative details to be employed in accomplishing the statutory purpose. *Muldoon* v. *Lowell,* 178 Mass. 134. *Webb Granite & Construction Co.* v. *Worcester,* 187 Mass. 385, 389. *Pope* v. *Berry,* 223 Mass. 473, 475. *Adams* v. *Selectmen of Northbridge,* 253 Mass. 408, 410. *Larkin* v. *County Commissioners of Middlesex,* 274 Mass. 437, 439. *Adams* v. *Plunkett,* 274

Mass. 453, 459. *Fluet* v. *McCabe*, 299 Mass. 173, 180. *Universal Machine Co.* v. *Alcoholic Beverages Control Commission*, 301 Mass. 40. *Slocum* v. *Medford*, 302 Mass. 251, 254. *Opinion of the Justices*, 302 Mass. 605, 615–616. *Ring* v. *Woburn*, 311 Mass. 679, 687. *Commonwealth* v. *Hudson*, 315 Mass. 335, 341. *Lynch* v. *Commissioner of Education*, 317 Mass. 73, 79. *Attorney General* v. *Trustees of Boston Elevated Railway*, 319 Mass. 642, 655–657. *Demos Brothers General Contractors, Inc.* v. *Springfield*, 322 Mass. 171, 175, 176.

As already pointed out, all that the statute (§ 3) provides with reference to the blanks is that the board shall furnish the blanks within a ten day period in sufficient quantity to provide spaces for a certain number of signers. The control and supervision of supplying the blanks are left to the board. Nothing is said in the statute as to the methods or means to be employed in printing and distributing the blanks. These administrative details connected with the performance of this duty rest with the board. The board is to act fairly, impartially and honestly in the discharge of its duties. It is difficult to find any justification for the procedure of regulating the order of events on occurrences prior to the stated hour for the opening of the board's office, but whatever may be said as to the propriety of the method and the sequence adopted in printing and furnishing the blanks, no question can now be raised as to the attitude and motives of the board. The board was acting within the general power conferred upon it by the statute and the commission has found that the board was acting in good faith. The correctness of that finding is not challenged by the petitioner, although he could have attacked the finding if he believed that the evidence before the commission was insufficient to support it. G. L. (Ter. Ed.) c. 249, § 4, as amended by St. 1943, c. 374, § 1. *Sullivan* v. *Municipal Court of the Roxbury District*, 322 Mass. 566. In these circumstances the findings of the commission are "conclusive as to all matters of fact, within their jurisdiction, passed upon by them." *Tewksbury* v. *County Commissioners of*

*Middlesex,* 117 Mass. 563, 565–566. *Westport* v. *County Commissioners of Bristol,* 246 Mass. 556, 562. *Mayor of Medford* v. *Judge of First District Court of Eastern Middlesex,* 249 Mass. 465. *Marcus* v. *Street Commissioners of Boston,* 252 Mass. 331, 333. *Burke* v. *Metropolitan District Commission,* 262 Mass. 70, 75. *Walsh* v. *District Court of Springfield,* 297 Mass. 472, 474, 475. *Compton* v. *State Ballot Law Commission,* 311 Mass. 643, 646. *Morrissey* v. *State Ballot Law Commission,* 312 Mass. 121, 124–127.

*Petition dismissed.*