OLIN W. CUTTER *vs.* COUNTY OF MIDDLESEX.

Suffolk.    April 3, 1905. — November 28, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, LORING, BRALEY, & SHELDON, JJ.

*Statute*, Construction.  *Contract*, Validity.  *Condition*.  *Middlesex County*, Building at Cambridge for registry of deeds and Probate Court.

Under St. 1896, c. 500, providing for the construction by the county commissioners of Middlesex of a building at Cambridge for the registry of deeds and the Probate Court at a cost not exceeding $500,000, the provision of § 2, that no contracts shall be made for the construction of the building until detailed estimates of cost have been approved by the special board created by that section, applies to the claim of an architect, employed by the county commissioners to complete the erection of the building after the original contractor has failed, for compensation for his services as architect and for the sums paid by him for the services of an inspector employed by him in the completion of the building, and without such approval the architect cannot maintain an action against the county for his services and expenses.

CONTRACT, by an architect for services and expenses, on an account annexed with four items. Writ dated March 6, 1902.

In the Superior Court the case was tried before *Fessenden*, J., without a jury. The first and second items annexed to the declaration were as follows:

"1. To special services rendered between May 15, 1899 and Sept. 1, 1901, at the request of the county commissioners, in attending to, providing for and carrying out the completion of the registry of deeds and probate building at East Cambridge, after the contract made by the commissioners for the erection and completion of said building had been terminated, including among other services, estimating the amount of work done and to be done by each subcontractor, [enumeration of services] $10,000.

"2. To services of an inspector during the time of the service charged in item No. 1, being the amount of money paid for this service, $1,447.20."

The first ruling requested by the defendant, referred to in the opinion, was as follows: "1. Upon the pleadings and evidence the plaintiff is not entitled to recover anything upon the first and second items of the account annexed to his declaration."

The judge refused to make this ruling, and gave the second ruling requested by the defendant, which was "2. Upon the evidence, the plaintiff cannot recover upon items 1 and 2 of his declaration more than the unexpended balance of the original sum of $500,000 which still remains in the treasury of the county."

The judge found for the plaintiff on the first and second items of the account annexed in the sum of $1,137.53. He also found for the plaintiff on the third and fourth items, which were for services relating to other buildings and were not in dispute. At the request of both parties, he reported the case for determination by this court. If there was no error in the rulings, judgment was to be entered upon the finding; otherwise, such judgment was to be entered as should have been entered upon the facts found and rulings requested.

The report of the judge contained the following statement: "The only ground upon which the defendant contended before me that the $1,137.53 was not recoverable was that the plain-

tiff's employment was invalid by reason of the failure to make a contract with him in conformity with the formalities required by the statutes."

The case was submitted on briefs at the sitting of the court in April, 1905, and afterwards was submitted on briefs to all the justices.

*Z. S. Arnold*, for the plaintiff.

*G. L. Mayberry*, for the defendant.

HAMMOND, J.    St. 1896, c. 500, under which the building in question was constructed, is peculiar. It authorizes the county commissioners " to provide accommodations at Cambridge for the registry of deeds and for the probate court . . . by the erection of a suitable building on the site heretofore acquired " by them under a previous statute. " The expense incurred for constructing said building, in addition to the cost of the site, shall not exceed the sum of five hundred thousand dollars ; and said commissioners shall not make any contracts calling for a larger expenditure in the aggregate, for said purpose than the amount herein specified." § 1.

Section 2 provides that " No contracts shall be made for the construction and furnishing of said building until plans, together with detailed estimates of cost from responsible parties, who are willing and prepared to furnish bonds with satisfactory sureties for the actual performance of the work and the furnishing of the materials for the amounts specified in said estimates, have been submitted to a board to consist of the judges of probate for the county of Middlesex and the clerk of courts of said county, and approved by said board. Such approval shall not be given until said board is fully satisfied that the cost of the building and its furnishings, ready for the use of said registry and court and of the offices incident thereto, will not exceed the sum of five hundred thousand dollars."

Section 3 provides that " After said plans shall have been so approved," the commissioners " shall advertise for proposals for doing the work and furnishing the materials required by such plans." It then sets forth the manner of the advertising, and provides that the contracts for the work shall be awarded to the " lowest responsible bidder who offers to do the same within the limits prescribed by this act, but shall not be so awarded until

said contracts shall have been approved by the board provided for in section two." Power to reject any and all bids is reserved to the commissioners.

Section 4 is as follows: " At the end of every contract awarded under the provisions of this act shall be inserted the following clause : — But said party of the second part shall not receive or be entitled to receive any sum in addition to the sum named in this contract, for any additional work done or material furnished, or for any other matter or claim whatsoever, unless, before the additional work or material or matter of claim shall be done or furnished, the board constituted by chapter five hundred of the acts of the year eighteen hundred and ninety-six shall first approve the same and the additional sum or sums to be paid therefor."

Section 5 provides that to meet the expenses incurred under this act the commissioners may issue bonds "not exceeding in the aggregate five hundred thousand dollars."

Section 6 provides that " The receiving by the county commissioners of bids from responsible parties for the complete construction of the building authorized by this act and for furnishing and equipping the same ready for the use of said registry and court within the sum of five hundred thousand dollars, said receipt being evidenced by a certificate to that effect signed by the members of the board named in section two of this act, shall be a condition precedent to the authority of said commissioners to borrow or to incur indebtedness under this act . . . except for procuring plans and specifications."

It is impossible to read this act without seeing that it differs widely from the ordinary act authorizing or requiring certain public officers to erect a building and making an appropriation therefor. It is very stringent. It plainly shows a rigid determination on the part of the Legislature to limit the expense of the building and its equipments to the sum of $500,000, and contains elaborate provisions designed to carry out that intention. Except for plans and specifications, no contract is to be made until the whole question whether the building can be erected and equipped within the sum named has been carefully considered by the special board named in § 2, and until they are fully satisfied that it can be made ; nor can any expense be

incurred or bond issued until responsible bids for the whole undertaking have been received by the county commissioners and the fact evidenced as stated in § 6. No one contract is to be made for any part of the work and chances taken as to whether the rest of the work can be done within the remainder of the money appropriated. The statute plainly contemplates that the opinion of the special board as to whether the work can be done within the sum appropriated shall be based not upon loose estimates but upon bids of responsible parties willing to contract in accordance with their estimates. And, as if to make the matter beyond doubt, if possible, no contractor is to have any pay for additional or extra work except with the approval of the special board; and such a provision shall be inserted in every contract. These provisions, taken in connection with that in the first section as to the cost of the building and the power of the commissioners to make contracts, conclusively show that the authority granted by this act is exceptionally limited. It is difficult to see how the Legislature could have announced its purpose more emphatically, or provided for the accomplishment of it in a more reasonable way.

One of the most noticeable features of the act is the limitation placed upon the powers of the county commissioners as to the making of contracts. Although by the general laws they were at that time vested with the authority " to provide for erecting and repairing court houses, jails, and other necessary public buildings, within and for the use of their county," (Pub. Sts. c. 22, § 20,) yet, on account of the cost of this particular undertaking or for some other reason, the Legislature concluded not to entrust this matter solely to the county commissioners. They could reject bids, but they could not award a contract without the approval of the special board named in the second section.

It is contended by the plaintiff that this supervision of that board over the making of contracts is confined to those originally made, and does not extend to those made to finish the work of an original contractor who has failed. But the act is not open to that construction. The one central feature of it is the limitation of authority as to cost, and the one central feature of the plan adopted to make that limitation effectual is the supervision of the special board over the contracts. And not only does this

supervision exist over the contract at the time the county commissioners make it, but by the express language of § 4 it is to be exercised over every subsequent claim made by any contractor for extra compensation for " any additional work done or material furnished, or for any other matter or claim whatsoever." Such a claim is not to be allowed until approved by this board. In other words, the supervision is to be continuous. It was just as necessary for the purpose of the Legislature that this board should approve of one contract as of another, and it was immaterial to this purpose whether this new contract was founded upon extra work done by the original contractor or became necessary through his failure to complete his contract. It cannot be presumed that the Legislature, fully bent on its purpose as to cost, did not foresee the contingency of the failure of a contractor to carry out his contract and the consequent necessity for a new contract. Such a failure is not unusual in building operations. The act clearly indicates that the supervision of the board was to follow every contractual claim whether made under an original contract or in some modification thereof, and whether made by virtue of any arrangement with the original contractor or any substitute or successor of him in the work. To adopt the construction contended for by the plaintiff would be inconsistent with the leading purpose of the Legislature, and indeed might have defeated it.

It is further contended by the plaintiff that in any event the provision is not applicable to a contract such as his was. That contention is not tenable. There was no difficulty in making a contract with him sufficiently definite to meet the requirements of the act.

Inasmuch as the contracts upon which the items 1 and 2 of the plaintiff's declaration are based were not approved by the special board and therefore were not authorized by the statute, he cannot recover anything upon these items; and the first ruling requested by the defendant should have been given.

The conclusion to which we have come upon this branch of the case makes it unnecessary to consider the other grounds of the defence. In accordance with the terms of the report there should be judgment for the plaintiff for $950, with interest from the date of the writ; and it is

*So ordered.*