GEORGE G. ADAMS *vs.* COUNTY OF ESSEX.

Middlesex.    January 11, 1910. — February 24, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, BRALEY, & SHELDON, JJ.

*County Commissioners.   Public Officers.   Municipal Corporations,* Officers and agents.   *Contract.   Agency,* Ratification.   *Essex County.*

In employing an architect to draw plans for proposed county buildings or for proposed alterations in buildings already existing, county commissioners, although they are a local body whose duties relate principally to the affairs of the county, act as a board of statutory officers whose power to bind the county by contract depends upon the authority conferred by the Legislature.

Where the proper accommodation of the public demands that a county building should be improved and made more convenient by extensive alterations or that it should be enlarged by the erection of additions so that, when completed, substantially a new structure will be provided, it is the duty of the county commissioners before contracting for any expenditure to call the attention of the Legislature to the necessity and to ask for an appropriation; and if an appropriation is granted, the commissioners are limited, as to the amount which lawfully they can contract to expend, to the amount appropriated.

*Whether* county commissioners can contract for the county except by a majority vote at a meeting of the board, at which the members are present or of which they have received notice, and a record of which is kept according to R. L. c. 20, § 18, here was doubted but was not decided, a contract of the commissioners which was not so made being decided to be unauthorized for another reason.

Although by R. L. c. 20, § 27, county commissioners are permitted to make an oral contract without competitive bids when the amount involved does not exceed $800, and by the second paragraph of § 24 they are empowered " to represent their county and to have . . . the management of its business and affairs in all cases not otherwise expressly provided for," such commissioners are not authorized to bind the county by contracts involving less than $800, made with an

architect for the drawing of plans showing proposed alterations in a registry of deeds building, and of plans showing a separate boiler house for county buildings, where no special appropriation therefor has been made or authorized by the general court as provided by the first paragraph of § 24.

Where county commissioners have made a contract with an architect for the drawing of plans for a heating plant isolated from county buildings, which they did not have authority to make because no appropriation had been made or authorized by the General Court in accordance with R. L. c. 20, § 24, they are not given authority to ratify such contract by a subsequent special statute authorizing the erection and equipment of such heating plant, if such statute expressly delegates the authority to contract for plans to a special commission and not to the county commissioners.

*It seems*, that if county commissioners, who have been given authority by the General Court to take land and to prepare plans for the erection of a certain county building, and for that purpose have been given authority to expend a sum not exceeding $50,000, after having procured the money and having placed it in the county treasury, without complying with the requirements of R. L. c. 20, § 27, as to giving notice for proposals in case of contracts for building, altering, furnishing or repairing public buildings which exceed $800, employ a certain architect to draw plans for a building of the estimated cost of $275,000 without stipulating any definite compensation therefor, and either the commissioners or the architect understand that the usual compensation for such plans would exceed $800, and the architect prepares the plans and a reasonable compensation for the work is $9,625, the architect cannot recover therefor from the county, because such a contract would be made in violation of R. L. c. 20, § 27, and therefore by the provisions of that section "no payment thereon shall be made by the county."

If by a statute of the General Court county commissioners are authorized to spend $50,000 for the acquirement of land for a county building and for the preparation of plans for the building, and by a subsequent statute of the General Court an additional amount is authorized to be used for the acquirement of land for the same purpose, but no mention is made of plans in the later statute, any plans contracted for must be paid for out of the original $50,000, and no part of the additional sum authorized by the subsequent statute can be so used.

At the trial of an action of contract a material question was whether or not certain payments, made by county commissioners out of funds which by a statute of the General Court they were authorized to use for the acquiring of land upon which a county building was to be built, were legal, and the county treasurer testified without contradiction that the sums so paid were included in accounts properly certified as having been allowed by the commissioners by an assistant clerk of courts, who by R. L. c. 165, § 3, was an assistant clerk of the board of county commissioners, and that the certificate was accompanied by deeds of conveyance of land for which the payments were made. The presiding judge was asked to rule as matter of law that the payments were illegal because they were not made, as required by R. L. c. 21, § 9, upon orders drawn and signed by a majority of the commissioners certified by their clerk and accompanied by the original bills, vouchers or evidences of county indebtedness for which the payment was ordered, stating in detail the items and confirming the bill or account. The ruling was refused. *Held*, that the ruling was refused rightly because from the testimony of the treasurer a finding would have been warranted that the provisions of the statute had been complied with.

County commissioners, who have been authorized by the General Court to acquire

land for the erection of a county building and to prepare suitable plans for such building, for which purposes they were to expend a sum not exceeding $50,000, having procured the money and placed it in the county treasury, made a valid contract with an architect for the furnishing of plans for a building of the estimated cost of $275,000, and the architect furnished such plans. The reasonable value of his services in doing so was $9,625. Thereafter the architect was paid $2,000 on account in two payments and the commissioners used up all but $20.35 of the remainder of the $50,000 appropriation in payments for land taken. The architect brought an action against the county for the balance alleged to be due him. The judge who presided at the trial ordered a verdict for the plaintiff for $20.35. *Held,* that the action of the trial judge was correct, because, while the commissioners should have paid the plaintiff first and then sought an additional appropriation for the purpose of paying for land taken, their negligence in not doing so and in permitting the fund in their hands to be reduced so that the plaintiff could not be paid therefrom did not make the county liable, since in so doing the commissioners were acting as public officers and not as the county's agents.

CONTRACT. Writ dated January 23, 1907.

The declaration was upon an account annexed which in substance was as follows:

| | | |
|---|---|---:|
| (1) | July 3, 1905. For architectural services in drawing plans for proposed buildings for registry of deeds and probate court at Salem, . . . 3½% on an estimated cost of $275,000 | $9,625.00 |
| (2) | June 1, 1904. For architectural services in drawing plans showing proposed alterations in registry of deeds building at Salem, . . . 1% on estimated cost of $50,000 . . . . | 500.00 |
| (3) | June 1, 1905. For architectural services in drawing plans showing a separate boiler house at Salem . . . . . . . . . . | 300.00 |
| (4) | For disbursements for sundry travelling expenses in connection with the drawing of said plans . . . . . . . . . . . . | 37.53 |
| | Total . . . . . . | $10.462.53 |
| Credits | . . . . . . . . . . . . . . . . . | 2,000.00 |
| | Balance due . . . . | $8,462.53 |

The answer, besides containing a general denial and an allegation of payment, alleged " that if the plaintiff shall show that he was ever employed to render services, as set forth by him in his declaration, such employment, and all contracts or agreements

made by the county commissioners concerning the same, were entered into in violation of the provisions of statute concerning the same, and were not binding upon the defendant; and that the furnishing or drawing or procuring of any plans, either for alteration or for the erection of any building for the registry of deeds and Probate Court at Salem . . . were done under the provisions of St. 1902, c. 266, and that by said act the amount which the county commissioners were authorized to expend for the acquiring of land and preparing plans for a building for the registry of deeds for the southern district and for the probate court of said county was limited to the sum of $50,000, and that all of said sum has been properly expended for the purposes as set forth in said act long prior to the bringing of the plaintiff's writ."

The case was tried before *Hardy*, J. The facts are stated in the opinion.

At the close of the evidence the plaintiff requested the following rulings:

1. The vote of the county commissioners of December 12, 1904, to employ the plaintiff to prepare plans under St. 1902, c. 266, and the performance of work by the plaintiff under said vote constituted a valid contract between the parties and, the contract being made and the liability of the defendant incurred at a time when there was sufficient money under appropriation to discharge said liability, the plaintiff is entitled to recover whatever the jury find to be the balance due under said contract with interest thereon.

2. All liabilities incurred by the defendant under St. 1902, c. 266, are entitled to be paid in the order in which said liabilities were incurred, and the defendant could not exhaust the appropriation under said act by the payment of liabilities incurred subsequent to that incurred with the plaintiff and thereby deprive him of the right to recover.

3. The payments of the liabilities incurred by the defendant subsequent to the contract with the plaintiff not having been made in conformity with the provisions of R. L. c. 21, § 9, were illegal, and the appropriation is not therefore legally exhausted.

4. The liability incurred by the defendant under its contract

with the plaintiff constituted a charge upon the fund appropriated under St. 1902, c. 266, and it was the duty of the commissioners to reserve sufficient moneys from that fund to discharge said liability when its amount should become determined and not exhaust the fund by paying liabilities subsequently incurred.

5. The plaintiff was chargeable with knowledge only of such payments or liabilities under the appropriation as were made or incurred before his contract and such as were then matters of record, and he was not bound to know of payments or liabilities subsequent to the date of his contract.

The presiding judge refused to rule as requested, ruled that the plaintiff was not entitled to recover on the second item of the account annexed to the declaration, and instructed the jury in regard to the third item that if they were satisfied that those services were rendered before May 19, 1905, then they had the right to consider the value of the services in connection with the other items in this case.

Questions then were submitted to the jury, which they answered as follows:

(1) What was the fair and reasonable value of the services rendered by the plaintiff for the defendant county, described in the declaration?  To which the jury answered, $9,962.53.

(2) Were the bills for such services presented for payment to the treasurer of the defendant county within a reasonable time after they were approved by the county commissioners? To which the jury answered, Yes.

(3) What was the amount unexpended of the appropriation of $50,000 under St. 1902, c. 266, at the time of the last payment on account of such bills on April 3, 1905?   To which the jury answered, $20.35.

(4) What was the amount unexpended of the appropriation of $12,000 and the proceeds of the sales of buildings and materials under St. 1905, c. 430, at the time of the presentation of the plaintiff's bills on May 23, 1906?   To which the jury answered, $2,041.50.

The presiding judge thereupon ordered the jury to find for the plaintiff in the sum of $20.35, and, the plaintiff having excepted, reported the case for determination by this court, the

parties agreeing that, if on the facts found the rulings on questions of law and of fact, were correct, the verdict was to stand and judgment was to be entered on the verdict; but that otherwise a verdict was to be ordered on the findings of the jury in their answers to the first and the fourth questions.

The case was submitted on briefs.

*J. P. Sweeney & L. S. Cox,* for the plaintiff.

*H. H. Newton & C. M. Cram,* for the defendant.

BRALEY, J. The declaration is upon an account annexed of four items, but, the fourth having been waived, the other items are for services rendered by the plaintiff as an architect in preparing and furnishing plans for proposed county buildings and for proposed alterations in the building used for the registry of deeds. By their answer to the first question, the jury have determined that, exclusive of the second item, the total amount charged represents the fair and reasonable value of the services, and the questions for decision are, whether the defendant is responsible for the whole, or for any part of this sum, or for the amount of the second item.

In employing the plaintiff, the county commissioners, although a local body whose duties related principally to the affairs of the county, acted as a board of statutory officers whose power to bind the county by contract depended upon the authority conferred by the Legislature. *Morse* v. *Norfolk County,* 170 Mass. 555, 556. *Connors* v. *Stone,* 177 Mass. 424, 428. By the Rev. Sts. c. 14, § 31, county commissioners were empowered "to provide for the erecting and repairing of court houses, jails, and other necessary public buildings, within and for the use of the county." No restriction seems to have been placed upon the amount necessary to be expended, which was apparently left to the sound judgment of the board. But by § 32, in making the estimates of taxes for county charges to be laid annually before the General Court, they were required to include for the next ensuing year all charges and debts for the building and repairing of court houses and other county buildings. The Gen. Sts. c. 17, §§ 16 and 18, and Pub. Sts. c. 22, § 20, and c. 23, § 22, by re-enactment contained similar provisions. To check a growing tendency to extravagance, accompanied by other evils in the management of county affairs, St. 1897, c. 137, to further define

the powers and duties of county commissioners, was passed. The first section amended Pub. Sts. c. 22, § 20, by providing, " but no money shall be paid or liability incurred for erecting such buildings in excess of the amount specifically authorized by the General Court therefor, or, except in case of emergency, for the repairing of such buildings in excess of the amount authorized by the General Court for the repairs of county buildings." By this statute, which is now embodied in R. L. c. 20, § 24, where the proper accommodation of the public demands that a county building should be improved and made more convenient by extensive alterations, or enlarged by the erection of additions, so that when completed substantially a new structure has been provided, it is the duty of the commissioners before contracting for any expenditure to call the attention of the Legislature to the necessity and ask for an appropriation, which if granted they cannot lawfully exceed. *District Attorney* v. *County Commissioners,* 14 Gray, 138. *Morse* v. *Norfolk County,* 170 Mass. 555.

It is conceded that under the provisions of the special acts the commissioners had not been authorized to make over the old building occupied by the registry of deeds and of probate, or to build a boiler house, and to contract for the preparation of plans as a necessary part of the work. Sts. 1902, c. 266 ; 1905, cc. 423, 430 ; 1907, c. 151. The plaintiff rests his right of recovery upon the ground, that his employment was authorized under R. L. c. 20, § 27, permitting an oral contract without competitive bids where the amount involved does not exceed $800, and that as § 24 also authorizes the commissioners " to represent their county, and to have . . . the management of its business and affairs in all cases not otherwise expressly provided for," the defendant is liable under the second item, because one of the incidental purposes, for which plans showing the proposed reconstruction were prepared, was for use at a legislative hearing in opposition to the building of a new court house, which in the judgment of the commissioners would impose an unnecessary expense upon the county. In each instance the plaintiff furnished the plans at the oral request of the commissioners, although afterwards upon presentation they indorsed the bills, as allowed. It may be questioned whether the commissioners

could contract for the county except by a majority vote at a meeting of the board of which the members had received notice or were present, and their action recorded as required by R. L. c. 20, § 18. *Reed* v. *Scituate*, 5 Allen, 120, 124. *Damon* v. *Selectmen of Framingham*, 195 Mass. 72, 78. But independently of this doubt, as it does not appear that any appropriation had been provided under § 24, with which § 27 must be read, they were not authorized to bind the county by either contract, and the ruling that the plaintiff could not recover on the second item was correct. *Connors* v. *Stone, ubi supra.*

In reaching the same result as to the third item, we have not overlooked the subsequent St. of 1906, c. 294, providing an additional grant for furnishing and equipping the new registry and probate building, and authorizing the erection and equipment of an isolated heating plant, which was however to be constructed subject to the provisions of the St. of 1905, c. 423. By § 2 of that act, authority to contract for plans having been expressly delegated to a special board, the county commissioners were deprived of any power to confirm their previous employment of the plaintiff.

We now come to the first item, over which the principal controversy arises. By St. of 1902, c. 266, § 1, the county commissioners were given authority to take land by purchase or otherwise as far as might be necessary, "for a new building for the use of the registry of deeds for the southern district of said county, and for the Probate Court of said county, and to prepare suitable plans for such building. For these purposes they may expend a sum not exceeding fifty thousand dollars." To meet the expenses to be incurred, § 4 authorized them from time to time to borrow this sum on the credit of the county, and the money was procured and placed in the treasury. At the time of its passage R. L. c. 20, § 27, was in force, providing that "all contracts . . . for building, altering, furnishing or repairing public buildings, or for the construction of public works . . . shall, if exceeding eight hundred dollars in amount, be made in writing, after notice for proposals therefor has been posted in a conspicuous place in the county court house for at least one week and has been published at least three times in a newspaper, if any, published in the city or town interested in the

work contracted for; otherwise in the newspaper of the most general circulation in the county." If this is not done, "no contract made in violation of the provisions of this section shall be valid against the county, and no payment thereon shall be made by the county." It is therefore manifest that the authority of the commissioners was limited and defined by these statutes, with notice of which the plaintiff was charged. *Edge Moor Bridge Works* v. *County of Bristol*, 170 Mass. 528, 533. *Boston Electric Co.* v. *Cambridge*, 163 Mass. 64. *Wormstead* v. *Lynn*, 184 Mass. 425. *Webb Granite & Construction Co.* v. *Worcester*, 187 Mass. 385, 387. *Revere Water Co.* v. *Winthrop*, 192 Mass. 455. *Bartlett* v. *Lowell*, 201 Mass. 151. *Friedman* v. *County of Hampden*, 204 Mass. 494.

Without having advertised for proposals, the board at a regular meeting held on December 12, 1904, unanimously voted to employ the plaintiff as an architect, "to prepare plans for a building in Salem under St. 1902, c. 266," but no definite compensation was named, nor was any contract in writing prepared and signed. The plans, although furnished in consequence of the vote, were never used, as they were not accepted by the supervisory commission subsequently created by the St. of 1905, c. 423, § 2, to whom alone plans were to be submitted, and approved. At that time no appropriation for the building had been made, although subsequently by St. of 1905, c. 423, it was provided.

If the agreement with the plaintiff shown by the recorded vote, and his acceptance, were a contract, the consideration of which was the fair and reasonable value of his services, one of the purposes of § 27 is to prevent in any form contracts exceeding the limitation, unless the other requirements are strictly followed. It would nullify not only the letter, but the spirit of the law, to hold that the county had been bound, where the commissioners and the plaintiff must have understood that by the usual standard of compensation, which is a percentage based upon the estimated cost of the building, the amount involved would exceed the limit. It would be difficult to assume that the commissioners acted ignorantly, yet if they disregarded the requirements of § 27, the plaintiff must have known that his services would exceed the amount. *Wormstead* v. *Lynn, ubi supra.* See *Cutter* v. *County of Middlesex*, 189 Mass. 451, 456. But

while this question has been argued at length in the defendant's brief, and necessarily calls for discussion, it does not appear that this defense, which would have been decisive, was passed upon at the trial, or, if presented, is not reserved by the terms of the report.

But if the contract is held to be valid and binding on the county, we find no error of law. The plaintiff admits that the commissioners could not exceed the amount provided by St. of 1902, c. 266. By this act suitable plans were specifically named, and although the St. of 1905, c. 430, granted an additional appropriation, which might be augmented by money received from the sale of buildings or parts of buildings and material on the land acquired for the site of the court house, no reference to plans is found, and no part of the increase over the original sum could be used for this purpose. R. L. c. 20, § 24. *Connors* v. *Stone, ubi supra. Boston Electric Co.* v. *Cambridge, ubi supra.* If the consideration of the contract was unliquidated, there is no question that at the time of the vote the specific amount in the treasury, not having been drawn upon except for a small disbursement, or anticipated by previous contracts, was more than enough to pay for the plaintiff's services. It was plainly the duty of the commissioners not to incur subsequent indebtedness to such an amount as to exhaust it, without leaving a sufficient balance, or if, after payment for the plans, the appropriation was deemed insufficient because it probably would be exceeded in paying for the land, to apply to the Legislature to grant an additional amount sufficiently ample to provide for the deficiency. *District Attorney* v. *County Commissioners, ubi supra.* The plaintiff, however, as we have said, must be presumed to have known of the limitation, and the purposes for which the money had been provided, and he also must have been aware that until the land was bought the court house could not be erected or his plans used, and to have contracted accordingly. It would abrogate the provisions of R. L. c. 20, § 24, if the commissioners, while expending the money for the purposes specified, could exceed the sum named, and it is apparent that the deficit arises from subsequent payments for the land.

But the plaintiff's argument cannot be sustained, that the payments were illegal because not made by the county treasurer

in conformity with R. L. c. 21, § 9, which provides that "no payments . . . shall be made by a treasurer except upon orders drawn and signed by a majority of the county commissioners, certified by their clerk and accompanied . . . by the original bills, vouchers or evidences of county indebtedness for which payment is ordered, stating in detail the items and confirming such bill or account. Said clerk shall not certify such orders until he has recorded them in the records of the county commissioners." The treasurer testified without contradiction, that the sums so paid were included in the accounts properly certified by the assistant clerk of courts as having been allowed by the commissioners, and the various deeds of conveyance running to the county which he also received properly may be deemed "vouchers or evidences of county indebtedness," within the obvious meaning of the statute.

By these payments the appropriation was exhausted, with the exception of a very small balance.

If the appropriation, as the plaintiff contends, is considered as a fund, which until the limit was reached should have been apportioned by priority between him and those from whom the land was obtained, in the order of purchase, until it was exhausted, the commissioners were not acting as the defendant's agents, and their negligence in permitting the fund to be thus reduced does not enable the plaintiff to hold the county for a sum sufficient to satisfy the remainder of his demand. *Morse* v. *Norfolk County*, *Wormstead* v. *Lynn*, *Connors* v. *Stone, ubi supra. McManus* v. *Weston*, 164 Mass. 263. It is the plaintiff's misfortune, that, after crediting the payments received, his recovery can be for only the nominal sum remaining unexpended of the original appropriation, but, from what we have said, his requests for rulings were rightly refused, and, by the agreement of the parties stated in the report, the entry must be, judgment on the verdict.

*So ordered.*