JOHN E. DYER & another *vs.* CITY OF BOSTON.

Suffolk.    May 21, 1930. — July 2, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Municipal Corporations,* Officers and agents, Building contract.  *Contract,* Validity, Performance and breach, Implied, Building contract, By municipal corporation.  *Boston.*

Under Sts. 1885, c. 266, § 6; 1909, c. 486, § 16, officials of the city of Boston in charge of the construction of a public building have no authority to contract for expenditures in excess of the appropriation for the building, even though such expenditures may be reasonably necessary; and a contract by such officials in violation of those statutes is not binding on the city.

A contractor, when making a contract with the city of Boston for the erection of a public building, is charged with notice of the limitation of the authority of the city's representatives contained in Sts. 1885, c. 266, § 6; 1909, c. 486, § 16.

The acceptance and use of a building by the city of Boston do not obligate the city to make payments for its construction in excess of the appropriation for that purpose.

A building contract between the city of Boston and a contractor provided that, if the contractor should fail to prosecute the work diligently, the city might terminate the contract, take possession of the premises and employ another person to complete the work, in which case the contractor should not be entitled to further payments except of the amount by which the amount due him for work done by him might exceed the expense incurred by the city in finishing the work; and that such excess should not be paid to him until the work should have been wholly finished.  The city's representatives, purporting to

act within express authority conferred by the contract, subsequently executed an order increasing the contractor's work in certain respects. The sum to be added to the contract price by reason of the change would have caused such price greatly to exceed the appropriation for the building. The city refused to pay the extra charge, whereupon the contractor notified the city that he would not proceed with the work until it was paid. He did no work thereafter, although he was prepared to resume operations upon payment of the extra charge. The city then also refused to pay his next monthly requisition, for work already done under the original terms of the contract, and had the work completed by another person at an expense somewhat less than the amount of such requisition. In an action thereafter brought by the contractor against the city, it was *held,* that

(1) The order of change by the defendant's representatives was void, since it would have resulted in the defendant's exceeding the appropriation;

(2) The plaintiff was not entitled to payment of his charge for the additional work even though the charge accrued at a time when there was enough of the appropriation remaining unexpended to meet it: the entire contract price was at that time a charge against the appropriation and must be treated as having been expended therefrom in determining whether the cost of the additional work would be in excess thereof;

(3) In view of the plaintiff's conduct, the defendant was warranted in refusing payment of his requisition: the defendant reasonably might assume that it necessarily would have the work finished by another person and that the expense thereof might be such that nothing would remain due to the plaintiff;

(4) The defendant was justified in having the work completed by another person and in charging the expense thereof to the amount due the plaintiff;

(5) There was no breach of the contract by the defendant;

(6) The plaintiff was entitled to recover only the amount by which his requisition exceeded the expense incurred by the defendant in having the work completed.

CONTRACT. Writ dated October 2, 1928.

By the first count of their declaration, the plaintiffs sought to recover $140,295.44 for breach of the contract described in the opinion; and by the second count, on an account annexed, $82,285.44 for labor and materials, including items totalling $55,209 for installing piles below grade minus sixteen feet and for removing iron slag. In the Superior Court, the action was referred to an auditor and thereafter was heard by *Bishop,* J., without a jury. Material facts found by the auditor and rulings given and refused by the judge are stated in the opinion. He found

for the plaintiffs in the sum of $5,080.18. The plaintiffs alleged exceptions.

*E. Mark Sullivan,* for the plaintiffs.

*S. Silverman,* Corporation Counsel, for the defendant.

SANDERSON, J. This is an action of contract in two counts. In the first the plaintiffs allege a breach by the defendant of their written agreement for the construction of a boiler plant for the defendant. In the second they seek to recover upon an account annexed. The case was referred to an auditor, and upon the coming in of his report was heard by a judge of the Superior Court without further evidence. He found for the plaintiffs in the sum of $5,080.18. Their exceptions are confined to rulings given and refused.

On or about April 16, 1928, the plaintiffs, who are partners, entered into a written agreement with the defendant whereby they were to furnish all materials and perform all the work necessary for and incident to the construction of the boiler plant for $85,872, subject to additions and deductions in accordance with the terms of the contract. The plaintiffs bound themselves to carry on the work with due diligence and despatch and to bring it to entire completion according to the specifications within six months from the date of the contract. The plans and specifications required that the foundations should be of concrete piles set at such a depth as would give to each pile a bearing capacity of five tons per square foot. In case the piles were carried to a grade lower than indicated on the drawings (grade minus sixteen) the plaintiffs were to be paid for such increase at the rate of $60 per lineal foot, and in case the piles were not required to go to that depth the defendant was to deduct $60 per lineal foot from the contract price.

Parts of the contract and specifications are not in the record, but among the provisions there appearing are the following: payments are to be made monthly on certificates when and as authorized by the architects; all orders and certificates are to be approved by the duly authorized representatives of the city and are not to be binding on the city until so approved; the architects shall issue certificates for payment monthly based on the contractor's monthly appli-

cations, and provision is made that each certificate shall be for eighty-five per cent of the value of the work done since the date to which the preceding certificate was computed. A provision is also made for reimbursement for loss or injury suffered by the contractor by any act or neglect of the city, its agents or employees. It provides for termination of the employment if the contractor neglects in any respect to prosecute the work with promptness and diligence, or fails in the performance of any of the agreements therein contained, if the architect certifies that such neglect or failure is a sufficient ground for such termination, with the right on the part of the city to enter upon the premises and take possession, for the purpose of completing the work included under the contract, of all materials, tools and appliances, and to employ any other person or persons to finish the work and provide the material therefor; and in case of such termination the contractor is not entitled to any further payment under the contract until the work is wholly finished, at which time, if the unpaid balance of the amount to be paid under the contract shall exceed the expense incurred by the city in finishing the work, such excess shall be paid by the city to the contractor, but if such expense shall exceed the unpaid balance, the contractor shall pay the difference to the city.

The plaintiffs entered upon the performance of their contract the last of April, 1928, and proceeded with the work according to its terms until a controversy arose between the parties as to the payment for additional piling and the removal of certain iron slag. In May the plaintiffs discovered that it would be necessary to drive the piles to a depth greater than that indicated in the drawings in order that each should have the specified bearing capacity, and so notified the defendant's architects. They also gave notice of the necessity of removing certain iron slag from the site of a chimney to be built. They received written authorization from the proper city officials to drive the piles to the required depth and to remove the slag, and on May 26, 1928, an order for change in the contract with the following terms was duly executed by the

defendant and delivered: "Drive the piles to additional depth required for firm bearing as per order of City Inspector on job; the additional depth to be determined by the records of the above named City Inspector. Excavate at Northeast corner where chimney is to be located and remove iron slag deposit so that piles under chimney may be driven and remove the slag deposit wherever necessary for driving of piles." About ten days before this order for change was executed the defendant's architects, in a letter to the plaintiffs purporting to authorize the driving of piles deeper than the grade indicated in the drawings and also the removal of slag, stated that the plaintiffs would receive additional compensation according to the terms of their contract for driving piles deeper than was originally intended.

The work of removing the slag was completed on May 31, 1928, and the plaintiffs' charge for the same was referred to as extra in their communication asking that this sum be added to their requisition for work completed in May. The price was found by the auditor to be fair and reasonable for the work done. The plaintiffs also completed in May the work of driving all concrete piles, and their charge for additional length of all piles driven to a lower grade than indicated in the drawings was $37,740, computed on the basis of six hundred and twenty-nine extra feet at $60 per foot. They requested the defendant to add this sum as an extra to their requisition for work done in May. The auditor found that the piles were in fact driven the number of extra feet specified and that the charge was proper under the contract unless ruled to be unconscionable. Neither of these items sought to be collected as extras has been paid. The plaintiffs' charges for other work done in April, May and June were approved by the architects and paid. Their charge for work in July was allowed by the architects but no certificate for payment was issued by them and the amount has not been paid. On June 22 they notified the architects and the proper city official that it was imperative that certificates for the payment of the full amount of their charges for driving piles and removing slag issue at once;

otherwise that they would not be able to continue with the work until such payment was received. On July 9 they again gave notice that to carry on the contract they must receive these payments at once, that they could not proceed further with any work until they had received them, and that they were so notifying the defendant and their bonding company, but that when the amounts were received they would proceed with the completion of their contract. On July 14, 1928, the plaintiffs filed a claim for damages in the sum of $75 a day for each working day from July 9 until such time as the requisitions for slag removal and additional pilings should be paid. On August 17, 1928, the plaintiffs wrote the architects that the failure to pay for the July work was a breach of contract and that the charges for extras had nothing to do with this payment. They did not for this reason, however, undertake to rescind the contract nor did they completely abandon the work, but continued to keep the superintendent and some workmen on the place and left there the materials and equipment, prepared to resume full operations when their demand of payment for slag removal and additional piling should be paid.

On August 30, 1928, the architects notified the defendant's superintendent of buildings that the plaintiffs had ceased building operations at the boiler plant, having done no actual construction work during the month, and under the terms of the contract certified that the contractors had abandoned their contract by refusing to proceed with the work after notification from them to do so. On September 7, 1928, the defendant's superintendent of public buildings notified the plaintiffs that the city was willing to pay their fourth requisition plus such sum for additional piling at the price of $60 per lineal foot as would exhaust the balance of the appropriation. Upon this basis the plaintiffs would be paid for seventy-four and eighty-seven one hundredths feet instead of six hundred twenty-nine. The auditor found that a fair and reasonable price for the additional piling was $3 a lineal foot and that this was in fact the price the plaintiffs paid for getting

the work done. On September 22, 1928, notice was given the plaintiffs by the superintendent that inasmuch as all work on the building had been discontinued the contract had been abrogated, and that the superintendent would readvertise for bids to complete the building. The plaintiffs were ejected from the premises by the defendant on September 27, 1928, the work was completed by another contractor and the cost charged against the plaintiffs' contract.

The trial judge granted the plaintiffs' requests to the effect that the price for piling was not unconscionable; that there was no evidence of corrupt collusion or the taking advantage of ignorance or mistake of city officials; that items of labor and materials as found by the auditor were within the requirements of the specifications and the scope of the work for which the city had made an appropriation; that if the municipality wrongfully prevents the contractors from completing their work they may recover without the production of the certificate called for by the contract. He ruled that, with respect to authorized municipal contracts, the city, subject to St. 1885, c. 266 and St. 1909, c. 486, has the same rights and obligations as individuals, and that as it accepted the plaintiffs' contract bid, together with their price therein for concrete piling, the plaintiffs had a right to assume that the city would carry out its agreement, subject to the provisions of the same two statutes.

He declined to give rulings requested to the effect that the plaintiffs were entitled to recover on all the items in the summary made by the auditor, and in addition thereto the price charged for piling; that the defendant broke the contract by failing to make regular monthly payments called for by the contract; that the refusal of the officer and the architect representing the city to certify the monthly payments due unless the contractors would agree to modify their contract relating to the price for concrete piling was unreasonable and a breach of contract for which the city was responsible; that at the time the plaintiffs were prevented by the city officials from proceeding with the work

there was adequate money available within the appropriation made with which to pay the plaintiffs for all the work and labor they had furnished; and that the plaintiffs are entitled to recover the amount found by the auditor to be their damages plus the amount claimed for additional concrete piling.

He granted the defendant's requests that the order for changes dated May 26, 1928, for driving piles to an additional depth and removing slag resulted in exceeding the appropriation of $100,000 made available by the city government for the work to be performed under the plaintiffs' contract, and was therefore illegal and void and in violation of St. 1885, c. 266, § 6, and of St. 1909, c. 486, § 16; that in view of the fact that the price of $60 per lineal foot for the additional piling resulted in exceeding the available appropriation for the work contemplated by the contract, the defendant was justified in refusing to make payment of this amount to the plaintiffs; that the refusal of the defendant to pay the fourth requisition of the plaintiffs, not certified and approved by the architects, did not constitute a breach of the contract by the defendant; that the refusal of the plaintiffs to proceed to complete the work in accordance with their contract when requested so to do by the defendant constituted a breach of contract on the plaintiffs' part; that upon their failure to proceed with the work and the resultant breach, the defendant was justified in considering the plaintiffs' contract broken and abandoned and in ordering the work completed by a new contractor as provided in the agreement; that the defendant, upon the plaintiffs' breach of contract, was entitled under its terms to use any and all material, apparatus, equipment and machinery on the job in having the contract completed by a new contractor; that in view of the plaintiffs' breach of contract the plaintiffs are entitled to receive from the defendant the difference between the price in their contract and the price in the agreement for completing the work as abandoned, which difference was certified by the architects in charge of the work to be $5,080.18. The parties agreed and the auditor found that the amount appropriated for the work to be done under the

contract was $100,000. He also found that, if the defendant were obliged to pay at the rate of $60 per lineal foot for the additional feet of concrete piling, the amount payable to the plaintiffs for completing the contract would exceed the appropriation.

It appears from the architect's certificate, made a part of the record, that the contract price was $85,872 plus the sum of $7,942.20 allowed by him for additional work in removing slag and constructing additional piles, making a total of $93,814.20; that the plaintiffs were paid $33,649.02 and the cost of completing the work was $55,085, thus leaving a balance of $5,080.18. The part of the appropriation of $100,000 not thus accounted for had been expended or allocated to contracts for architects' fees, borings and other matters incidental to the construction of the boiler plant.

The auditor found that the plaintiffs were at all times ready to complete the contract according to its terms and provisions, and from July 9, 1928, to September 27, 1928, retained on the job adequate equipment and construction material preparatory to resuming the work whenever the defendant should pay them the amount due them under the contract, but that the defendant refused to pay the amount of their fourth application, as well as their charges for removing the iron slag and for the six hundred twenty-nine feet of additional piling, unless the plaintiffs agreed to accept for the additional piling a sum less than that fixed by the contract.

St. 1885, c. 266, § 6, prohibits the officers and boards of the city of Boston, authorized to make contracts, from making any expenditures or incurring any liability for any purpose beyond the appropriation duly made therefor, and St. 1909, c. 486, § 16, prohibits any official of the city, except in case of extreme emergency affecting the health or safety of the people or their property, from expending intentionally in any fiscal year any sum in excess of the appropriation duly made in accordance with law and from involving the city in any contract for future payment of money in excess of such appropriation, with an exception not here material.

A penalty is provided for the violation of this law by any official. The purpose of these legislative enactments and of other provisions of the same general nature is to narrow and limit the powers of public officials in making contracts. *Adams* v. *County of Essex*, 205 Mass. 189, 194. *Morse* v. *Boston*, 253 Mass. 247, 252. The officials of Boston had no authority to contract for any expenditure in excess of the appropriation even though such expenditure might be found to be reasonably necessary in building the structure for which the money was appropriated. Contracts made for an expenditure in excess of the appropriation cannot bind the municipality. *Boston Electric Co.* v. *Cambridge*, 163 Mass. 64, 68. *Adams* v. *County of Essex*, 205 Mass. 189. *Twombly* v. *Selectmen of Billerica*, 262 Mass. 214, 220. The contractor was bound to take notice of this limitation of authority and to make his contracts with reference thereto. *Boston Electric Co.* v. *Cambridge, supra. Adams* v. *County of Essex*, 205 Mass. 189, 197, 198. *Bay State Street Railway* v. *Woburn*, 232 Mass. 201. *Meader* v. *West Newbury*, 256 Mass. 37. The acceptance and use of the building by the city do not bind it to pay for extra or unauthorized work done upon it. *Boston Electric Co.* v. *Cambridge, supra.* "Benefit to the city is irrelevant in this connection." *Conners* v. *Lowell*, 246 Mass. 279, 282.

The plaintiffs contend that the provision for extra compensation for additional piling is as much a part of the contract as the remaining provisions in it; that they were entitled to be paid for this because it was foundation work which must be completed before the superstructure could be erected, and that the cost was incurred at a time when enough of the appropriation remained unexpended to pay for it. If their contention were adopted it would follow inevitably that the balance of the appropriation would be insufficient to enable the defendant to meet the obligation to pay the plaintiffs the contract price for the things they bound themselves to do for that price. The controlling question is not how much of the appropriation remained in the treasury when the additional work was done, but what liabilities chargeable to the appropriation

had been actually incurred by the city at that time. *Webb Granite & Construction Co.* v. *Worcester,* 187 Mass. 385, 387. The contract bound the city to pay the plaintiffs the stipulated price of $85,872 for doing the things specified in it, including the driving of concrete piles to the grade indicated in the drawings (grade minus sixteen) but not including the carrying of piling to a lower grade. The liability was actually incurred against the appropriation for the doing of those specific things, and no part of this contract price could be expended or used for driving piles to a lower depth than grade minus sixteen. From the time the contract was executed the specified contract price must be treated as though actually expended out of the appropriation for the things which the plaintiffs agreed to do for that consideration, and the defendant would not be bound to make payments in excess of the balance of the appropriation. *Costello* v. *North Easton Village District,* 205 Mass. 54. Any other treatment of the matter might result in expenditures in excess of the appropriation.

In view of the plaintiffs' demands for payments to which they were not entitled, of their notices that the work would stop unless the payments were made and of the progress of the work thereafter, the architect was justified in believing that the plaintiffs would not complete their contract within the appropriation and in not issuing a certificate for the fourth requisition coupled as it was when made with the other demands, and the defendant was justified in not making further payments. It might reasonably assume that, if the plaintiffs continued to insist on the payments demanded, it would be called upon to exercise its right under the contract to have the work completed by someone else and the cost charged against the plaintiffs' contract. The city had a duty to see that the work was completed within the appropriation. It was not dealing with a case of an excessive demand, a part of which in any event would have to be paid the plaintiffs, for if the plaintiffs persisted in their demands and failed to perform the contract according to its terms and within the appropriation the defendant would have a right to

have the contract completed by another, and nothing might remain payable to the plaintiffs. No error appears in the rulings of the trial judge on this issue.

Although on the findings of the auditor certain work under the contract was being done by the plaintiffs up to the time of their ejectment, it is apparent from the correspondence of the plaintiffs and the clear inferences to be drawn from the findings that in September, 1928, the work was not being carried forward as required by the terms of the contract. So far as appears they submitted no requisitions for work done in August or September. They were insisting upon and still seek to recover payments which if made would result in their being unable to complete their contract obligations for the contract price and within the appropriation. We are of opinion that the defendant had a right to consider the statements of the plaintiffs made in July as to their intention in regard to proceeding with the work if their demands for payment were not met, to take notice of the progress of the work, and to rely upon the certificate of the architect that the contractors had abandoned their contract by refusing to proceed with the work after notification. It was therefore justified in having the work completed by another contractor and the cost charged against the plaintiffs' contract.

We find no error in the rulings and refusals to rule on the requests relating to the termination and breach of contract, and to the completion of the building by another contractor. All exceptions argued have been considered and in none of them do we find reversible error.

*Exceptions overruled.*