**COUNTY OF MIDDLESEX, Plaintiff, Appellant,**

v.

**GEVYN CONSTRUCTION CORP., Defendant, Appellee.**

No. 71–1175.

United States Court of Appeals, First Circuit.

Oct. 28, 1971.

---

Henry Paul Monaghan, Boston, Mass., with whom John Paul Sullivan, Foley, Hoag & Eliot, R. Robert Popeo, John P. Birmingham, Jr., and Mintz, Levin, Cohn & Glovsky, Boston, Mass., were on brief, for appellant.

Leslie A. Hynes, New York City, with whom Hynes & Diamond, New York City, Joseph T. Fahy, Cornelius J. Moynihan, Jr., Peabody, Brown, Rowley & Storey, Boston, Mass., William D. Powers, New York City, and Robert J. Stern, Mamaroneck, N. Y., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

This issue arises, one of many, from a singularly unhappy contract to construct a courthouse for the County of Middlesex by Gevyn Construction Corp. After mounting difficulties in the spring of 1970, when the parties negotiated concerning a claim by Gevyn for damages for delay occasioned by additional work, each party's dissatisfaction with the other mounted to the point where Gevyn threatened to and allegedly did suspend work on the project and the County terminated its contract with Gevyn. The County sued in the Massachusetts Superior Court, seeking a declaration that it was not obligated to arbitrate a number of matters pending before the American Arbitration Association, including the two at issue here—one being Gevyn's claim for delay damages and the other being its claim that the County wrongfully terminated the contract.

Gevyn removed the case to federal district court on diversity grounds. Eventually the County moved for a summary judgment that it was not required to arbitrate, while Gevyn moved for an order compelling arbitration and an injunction restraining the County from expending any of the unpaid balance for construction of the courthouse. The court granted neither summary judgment nor injunctive relief, but ordered the County to proceed with arbitration, meanwhile staying further judicial proceedings.

The County relies on two grounds to support its resistance to arbitration: (1) since it is prohibited by law from incurring liability in excess of legislatively authorized amounts, arbitration would be a futile act; and (2) since Gevyn allegedly committed a material breach of contract by stopping work, the arbitration clause itself should be treated as having been rescinded. Neither contention, in our view, has merit or warrants extended discussion.

 The County's first argument, stripped to essentials, is simply that the maximum amount it could be forced to pay Gevyn is the contract price, excluding any damages for delay or termination. It cites statutes (Mass.G.L. c. 34 § 14 and c. 35 § 32) confining county expenditures and assumption of liabilities to amounts authorized or appropriated, and cases such as Adams v. County of Essex, 205 Mass. 189, 91 N.E. 557 (1910) voiding county contracts exceeding statutory authorization. While the obligating and spending authority of governmental units or departments is obviously dependent on proper authorization, suffice it here to say that we distill no such principle of inherent illegality in governmental units subscribing to arbitration clauses in construction contracts as would prompt us to enjoin arbitration. *Cf.* Dickstein v. DuPont, 443

F.2d 783 (1st Cir. 1971). Indeed, it has been held by implication that a Massachusetts town can enter a contract which provides for dispute settlement by arbitration rather than by lawsuit, M. S. Kelliher Co. v. Wakefield, 346 Mass. 645, 195 N.E.2d 330 (1964). We see no reason why the same rule would not be applied to counties. Even if there were no legal obligation binding the County to pay damages over and above the contract price, such would not render arbitration a "futile" act. The County, assuming that termination of the contract was justifiable, has, under the General Conditions (Article 14) the rights to offset the cost of completion and to recover any excess over the unpaid balance. Or an award in favor of Gevyn might involve an amount not in excess of the authorized price. Or, given the arbitrator's decision, the proper authorities might see fit to honor the award. In short, we think the legal obstacles sought to be raised by the County are premature and are no sufficient basis for refusing to arbitrate if the agreement to arbitrate still stands.

■ The County's second argument is made in the face of a broad arbitration clause,[1] covering "[a]ll claims, disputes and other matters in question arising out of, or relating to this Contract or the breach thereof", excepting only decisions of the architect relating to artistic effect and claims waived by the making or accepting of final payment. An additional subparagraph of the clause also contains an undertaking by the contractor to "carry on the work and maintain the progress schedule during any arbitration proceeding."

The pertinent federal arbitration statutes, not claimed to differ significantly from Mass.G.L. c. 251 §§ 1 and 2(a), are 9 U.S.C. §§ 2 and 4. Section 2 states that a written agreement to arbitrate is enforceable, "save upon such grounds as exist at law or in equity for the revocation of any contract." Section 4 requires a court to order arbitration "upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue."

The County argues that (1) Gevyn's work stoppage was a material breach not only of the construction contract but of the arbitration clause itself; (2) that a material breach is a ground for revoking a contract; and (3) that therefore the arbitration clause is rendered invalid and as if it had never been made.

So much of the argument as points to breach of the contract as a whole flies in the face of Prima Paint v. Flood & Conklin, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), which interpreted section 4 as narrowly limiting the courts to those "issues relating to the making and performance of the agreement to arbitrate." 388 U.S. at 404, 87 S.Ct. at 1806. In that case, the Court held that the question whether there was fraudulent inducement in the making of the contract as a whole was for the arbitrator. As the Seventh Circuit recently observed, *Prima Paint* "considerably narrowed the role of the court *vis-a-vis* the arbitrator." Halcon International, Inc. v. Monsanto Australia Limited, 446 F.2d 156, 160 (7th Cir. 1971).

The County's principal effort with respect to the alleged breach of the arbitration's clause is to try to derive support by challenging the soundness of World

1. "7.10 Arbitration

  7.10.1 All claims, disputes and other matters in question arising out of, or relating to this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be

decided by arbitration in accordance with the Construction Industry Arbitration Association [sic] then obtaining unless the parties mutually agree otherwise. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."

Brilliance Corp. v. Bethlehem Steel, 342 F.2d 362 (2d Cir. 1965), which held that the analogous defense of waiver of an agreement to arbitrate by extra-judicial action was for the arbitrators. By destroying a negative, it seeks to imply a positive. Its efforts are unpersuasive.[2] Moreover, *World Brilliance* has since had good company in *Halcon, supra,* which, in holding that laches was a matter for the arbitrators, stated that the only kind of defense which could "unmake" an agreement for arbitration was "an unmaking resulting from the mutual cancellation of the contract by the parties or the voiding of the transaction due to fraud, mistake or duress." 446 F.2d at 159. The County's allegation that Gevyn breached the arbitration clause by failing to "carry on the Work and maintain the progress schedule during any arbitration proceedings" (Subparagraph 7.10.3) must be rejected *a fortiori.*

■ We make several further observations. To begin with, we cannot even conclude that the work stoppage was a breach of Subparagraph 7.10.3, since the arbitration proceedings here sought were not yet in existence when the alleged work stoppage occurred. Additionally, the County's interpretation would add an implied exception to the two explicit exceptions set forth in Subparagraph 7.10.1. Finally, and most importantly, that interpretation would eviscerate arbitration of all but inconsequential disputes. This is not and has long not been the law. Bruno v. Pepperidge Farm, 256 F.Supp. 865, 867–868 (E.D.Pa.1966); In re Pahlberg Petition, 131 F.2d 968, 970 (2d Cir. 1942). We therefore hold that the only grounds for revocation which meet the requirement

of 9 U.S.C. § 2 are mutual agreement or a condition which vitiates agreement *ab initio,* i. e., fraud, mistake, or duress. For it is only this kind of "revocation" which can be harmonized with adjudication directed to "the making of the agreement for arbitration."

Affirmed.

---

2. Contrary to the County's assertion, we find *World Brilliance* entirely consistent with Trafalgar Shipping Co. v. International Milling Co., 401 F.2d 568 (2d Cir. 1968), which held that laches—except for delay prejudicing a party in presenting proof on an issue related to the making or performance of an agreement to arbitrate—is for the arbitrators. Moreover, the County confuses the kind of waiver dealt with in *World Brilliance* with the pursuit of legal remedy inconsistent with arbitration, the "default" situation contemplated in 9 U.S.C. § 3, dealt with in such cases as Robert Lawrence Co. v. Devonshire Fabrics, Inc., 271 F.2d 402 (2d Cir. 1959), cert. denied, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960), and Hilti, Inc. v. Oldach, 392 F.2d 368 (1st Cir. 1968).